All right. Lisa, can we call the next case? 14-3391, People v. Ned James. All right. Mr. Spelberg, you represent People on this one as well, is that correct? Yes. Okay. Counsel for Mr. James, if you would be so kind as to approach the podium and introduce yourself. Thank you, Your Honor. I think you've got a flavor of where we're going with this. Possibly, Your Honor. Chris Cunningham from the Office of the State Appellate Defender representing Ned James. Could you spell your last name for me? Sure, no problem. B-E-N-D-I-K. Thank you. Mr. Bendick, did you want to reserve some time for rebuttal? Similar to my co-defense counsel. Okay, so I will hold you to 12 minutes on the opening notice. Thank you. All right. You can begin. From the prosecutor's first words, telling the jury that the officers later testifying would be superheroes or real-life heroes. Yeah, we agree. That was a bad argument. It was just bad. It was bad. It was inappropriate. Tell me how that was – there's an overwhelming amount of evidence here. How does that statement in opening that the jury's instructed not to even pay attention to, just to pay attention to the facts, and then you have an overwhelming amount of facts, how is that argument so prejudicial that this requires reversal? Three reasons, Your Honor. We have a pattern of misconduct in this case compared to the co-defendants. The last comments that the prosecutors left the jury were with, quote, when you come back with those verdicts of guilty, just like A.W. said to Officer Randall, she will say, God is good. We've got other instances of misconduct, inflaming the passage of the jury, putting them in the shoes of one of the complainants. We have – I have a debate about the Buck-Ford test for accountability. That is not a correct recitation of the accountability law. And in our case, we're a jury note. We're hung on aggravated criminal sexual assault, twice, two notes. Further, just like – And both notes said they were hung? Yes. We also have this objection was overruled, unlike people v. Jones, where this court said that likening a defendant to a criminal warranted reversal. That was in opening statements. That itself was prejudicial. Here, we have a theme. Good on one side, evil on the other. Who's the good? Who's the evil? Well, apparently the good's not my client. And this is in opening statements. And guess what? It should be free from argument. This court in people v. Jones explicitly said the purpose of an opening statement is to advise the jury concerning the questions of fact, and it is not and should not be permitted to become an argument. But, counsel, I agree it's an inappropriate comment. But, again, to the harm. I understand one of the things you're saying is let's look at this – let's look at the whole of their comments in opening and closing and the themes. But specifically as to the improper bolstering of these officers by referring to them as superheroes, with your client, your client was found inside the apartment, and he didn't deny he was found inside the apartment. So that's really all the cops testified about him, right? They didn't testify about the rape, about the digital penetration at all. The officers did not. And they said when we got there, we saw this guy. We called this guy out of a room, Ned James, and you admit he was called out, he was caught. He has a story to tell. So even if these cops were considered to be the greatest people of all time, your defense did not refute anything they said, did it? However, you're placing the officers on the side of also the complainants as this good versus evil theme. And the credibility of the complainants was at issue in this case about whether a sexual assault did occur. So calling the cops superheroes is bolstering the complainants. It's bolstering the state's entire case. And putting these superheroes and real live heroes for a 4-year-old on the state's side? The state cannot demonstrate that it's harmless, banal, reasonable doubt. The state must demonstrate that. Not us. We objected to it both at the time and post-trial. They can't do that, especially if we aggravate a criminal sexual assault. I mean, we have people be, when you have a note saying we have a hung jury, the evidence is mostly balanced, let alone not overwhelming. All right. Let's go to the accountability theory on the sexual assault. Is your position the same as Ms. Von Traeger's, that they could never establish accountability because this was not part of the scheme? Under the evidence that was presented at trial, the state did not demonstrate that this sexual assault was in furtherance of the common criminal design to rob. So it is the same. So it is the same. You're saying that it wasn't part of their plan, so therefore he's not on the hook for it. That's the law of accountability in the state. That's what people view Fernandez. Mr. Spelgren is simply wrong on the definition of accountability. It is not a but-for test. It is not the felony murder rule. So did you listen to my theory on, or my hypothetical? So you all agree you're not going to kill anybody, but then somebody opens fire when you're in there and you kill somebody. You're not on the hook for murder under that theory. It would depend on the reason why that person committed the shooting in that case. Just like all the cases on accountability, like Fernandez and Kessler, the shootings in those cases were done to further the crime because they were escaping. Now, all the cases that the state cites here, either the person knew about the sexual assault was going on, didn't disassociate himself from that crime, or actively charged the person down. So when they were turning him into the kitchen, wouldn't that give them a clue that something is amiss here? No, because in this case, what happened, and to clarify, I think factually, it was Coleman and Systrunk, the guy, the fourth co-defendant who died pre-trial. It's pretty clear it's Systrunk that was with him because he was 6 feet tall, a tall guy. Our guys were 5'7", 5'9". So she just wrote. So you want us to write a decision that would say that when offenders take a woman into a room and have her take off her clothes, and they're all involved in that process, that unless that offender does something sexually to her, that the other ones go free without accountability. That's what you want us to do. I'm trying to clarify what you're propositioning. So in this case, she's disrobed immediately upon getting into the residence. So it's okay to disrobe her, you see. Well, I think that's what I was just about to get to, is that the disrobing does not mean that the later sexual assault was in furtherance of a common criminal design. While it's awful for A.W. And what was the purpose of disrobing? Just like the violence in this case that was committed upon Andrews and on Cromwell Sr. to get the drugs and money. However, we know this. What did disrobing have to do with drugs? In trying to get the information from the, because they can't find the drugs, they're trying to get the information from the occupants. Where's the drugs and money? Because it's a drug house. And by disrobing her, she's going to tell. Disrobing her around won't do it. In this instance, it looked like the whole goal was robbing drugs or money. And we know that because it was verbalized. These defendants had no problem verbalizing their plans to everyone involved. It was also verbalizing what he thought of her genitals. So didn't that give anybody a clue, like this is going in a different direction? No. I mean, to me, what it shows is that this, again, is degrading her. And when you have specific acts done, all in furtherance of trying to rob drugs or money, but they do not say, hey, you know what, we're going to go sexually assault AW now unless you tell us where the drugs or money are. They didn't do that. They could have done that. They knew this was going to be in furtherance of a common criminal design. They absolutely would have done that. But you know what? We've got three defendants running around this apartment,  because they're trying to locate drugs or money. This is a momentary thing, and this is not like one of those cases where the defendant, hey, sexual assault goes, I'm okay with that. I'm going to stick around and not disassociate myself. This happens, apparently, very briefly, and there's no mention of it whatsoever. Now, turning to the spirit sentence argument. Can we talk about... Sure. Oh, never mind. Go ahead. Do you need an instruction to show? That's okay. Okay. My client, who is not the principal, has a 40-year sentence for aggravated criminal sexual assault, while the principal has a sentence of 21 years. The state, absent their misrepresentation of how that sexual assault conviction and sentence was calculated, has provided no case law where a court has upheld such a disparity. It was in the sentencing records, was it not? It was in the sentencing records, of course, and constitutionally it doesn't matter because if it's disparate from the principal, this court has repeatedly reduced punishments to the punishment that the principal received. People beat Jackson. The only Supreme Court people beat Calviero. There's a pretty significant difference in the criminal histories, right? Isn't that what Judge Ford even said? And that's a very important point, Justice Eltz. He's already being punished more severely than his co-defendants for the home invasion. He got 50 years on that because of his criminal background versus the 24 years that Coleman, where they're on equal footing, where they're equal participants in the home invasion. But where the principal is getting 21 years versus the accountable party, versus getting a 40-year sentence, it's absolutely unconstitutional, and this court has repeatedly reduced punishments under the same theory. So it doesn't matter what his criminal background is. Is that your point? It doesn't matter as far as whenever he gets sentenced, if the actual perpetrator got a lesser sentence. His criminal background is irrelevant. No, the court has said that you look at everything, but the reason why in this case the specific ag CSA sentence is disparate is because my client is already being punished more severely for someone that's on equal footing as the home invasion. And again, turning to, I think Mr. Spellbrook's going to address this before, argument we discussed regarding the disparity of the 85 versus 50 percent. I believe the State's going to concede that issue, that my client should not have that 85 percent time for grave bodily harm. Okay. And if I preserve the remainder of my time in rebuttal and ask for the request in the briefs. Thank you. Thank you, Your Honor. Mr. Spellbrook. So, Mr. Spellbrook, do you concede that issue should not have gotten 85 percent? Yes, Your Honor. And I called Mr. Bendick about this yesterday. There was clearly a mistake that occurred. The trial court never made any finding of grave bodily harm. Instead, what occurred in Mr. James' case was a mistaken understanding as to which the 85 percent truth in sentencing rules applies, a belief that it applied to home invasion. And since there was never any finding, the entire constitutional discussion based upon a lien is really not proper in this case. I would note that the minimus in this case does not reflect an 85 percent indication for the home invasion, nor does the Department of Corrections website indicate that they're holding Mr. James to 85 percent on the home invasion. So, in terms of that aspect of our brief, we are definitely withdrawing it. There is no home invasion. It was just a misstatement both by the prosecutor at sentencing as well as by the courts. As regards to the disparate sentence claim, what Judge Ford expressly found in this case was that Mr. James, the defendant here, based upon his much more significant criminal background, including the fact that he was on MSR, on mandatory supposed release for attempt murder, at the time that these offenses occurred, justified a significantly greater sentence. And we know that based upon the transcript from Defendant Coleman's sentencing, where Judge Ford specifically says he has much fewer criminal history. In fact, from what I can tell, the extent of Coleman's background is a misdemeanor offense in Minnesota. So there is a huge disparity in terms of their backgrounds which warrant greater punishment because Defendant James, in this case, has shown an inability to conform his conduct despite being sentenced to the Department of Corrections before. And Judge Ford factored that and properly exercised his discretion in this case. In regards to the opening statement and closing arguments, as counsel referred to it as a pattern of misconduct, it already identified the opening statement. I understand what the court is saying about it from your perspective. It's inappropriate, and we accept that if that's what the court was saying. But you cannot then link it to what counsel says is a pattern of misconduct. There is no, first off, no error in the attorney's closing argument describing the rule of accountability. There is no discussion of but-for accountability, as counsel says. Instead, what it is is a clear and proper discussion of the rule of accountability in Illinois. That's what the attorney stated. Likewise, at the end of the closing argument, it was a reference to the rape victim's statement after she's being rescued by the police that God is good, that she isn't going to die. That was what happened. It was a powerful way to end the statement. I understand what counsel is saying about how it could be perceived to be a call for divine intervention and divine approval, but that's not what it was, and this court shouldn't read the worst possible reading into that. But then finally, as I've said before, regarding the rule of accountability, Mr. Bendick said that I misstated what Fernandez said, and I would just direct the court to paragraph 19 of the Fernandez decision. I'm just going to read the very last sentence. In other words, there is no question that one can be held accountable for a crime other than the one that was planned or intended, provided it was committed in furtherance of the crime that was planned or intended. Right. I think what the defense is saying is consistent with that. I think their point is not – I think everyone would agree it doesn't have to have been planned in advance. It could come up spontaneously, but it still has to be in furtherance of it. So if you rob a bank and you shoot somebody, if the shooting was in furtherance of the robbery because you shot the clerk who wouldn't give you money or you shot a security guard who came at you, everyone's guilty of murder. But if in the course of the robbery you're leaving and someone says, you know, while I'm here I think I'm going to go rape that woman, and it had no – it didn't further the purpose of the original plan, that's, I think, where the defense would say you can't hold those other people, maybe of a felony murder if there was some kind of a felony, but under an accountability you cannot hold those bank robbers liable for the one bank robber running off and committing rape. Isn't that more what they're saying? Your Honor, I believe that is what they're saying. And wouldn't that be consistent with Fernandez? No, I don't believe it would be at all because Fernandez is a recognition that once you join a group bent on illegal activity, you are responsible for everything that group does. That's in furtherance of the plan. Well, Your Honor, many of the cases cited in Fernandez discuss, it's oftentimes where a group of people will decide to beat up another person, say in a gang retaliation or gang punishment type scenario, and one person who's a member of that gang will bring out a gun and murder the individual. The plan was never to murder an individual, and yet everyone is responsible in that regard for that same murder because it is in furtherance of the plan to harm the victim. In this case, this was in furtherance of the intent to commit a home invasion, to force these people there to provide their whatever drugs and money might have been there. It was in furtherance of the plan. It was not a completely unrelated scenario. I don't understand why you're not arguing that criminal sexual assault was a separate act but that they joined in on that too. In other words, so there were really two different common criminal designs. That's what I thought you were going to say when you came here. Well, Your Honor, I don't believe that it was an entirely separate act. I believe, as we stated in our brief, that it was intended to further humiliate and force the victim to provide whatever drugs and money may be in existence there. Clearly, there was no attempt to withdraw in any way from any of the four defendants. They saw what was happening. It was being egged on from what it seems to be. But I don't believe it was an entirely separate act. We have no evidence that any of the other three offenders participated in the sexual assault directly. But it was clearly within the scope of the plan of trying to force the people there to give them what they were trying to find, which was the drugs and money, which admittedly did not exist. If there's no further questions, we'd ask the Court to affirm the convictions and sentences in this case. Thank you. Thank you, Mr. Spobart. Thank you, Mr. Pendeck. I think the State concedes that there is no evidence that my client knew a sexual assault was going to occur or had occurred. But what about his argument that the sexual assault on her was just furtherance of the degrading, victimizing someone to get them to tell them where the drugs and money was? And if there was actually evidence of that in the trial court, I would agree with the State. Why can't we infer that evidence? Because there is no... They're beating the other guy. Aren't we inferring that that's why they're beating him? And they specifically announced the reason why they were physically beating them with, you know, a crowbar or something along those lines. Or, we're going to cut these expletives up, or we're going to start shooting expletives. What didn't they do? We're going to go sexually assault AW unless she tells us where the drugs or money are. And I think that's the key fact for this Court to remember. They wanted to do this in part of a common criminal design. They would have announced it. They went shy in what they were doing here. But you know what? The goal here was to get drugs or money. What Coleman did in the kitchen when he was by himself with none of the other co-defendants around simply cannot be imparted upon my client via accountability. And what the State essentially is asking for is that accountability is like felony murder. Illinois Supreme Court has rejected that in 2006. If you'll notice... But there's sufficient evidence that Ned James was in that bedroom with Coleman and AW when she was stripped, right? No. No? No, that he was one of the people that was in the bedroom. The jury couldn't have made that finding in this case? We have two people. It was Cistrunk and Coleman is how I've read the evidence, Your Honor. Didn't one of the people put three people in the room, though? Did Andros put three people in the room? Yes, he did. Thank you. I'm going off of AW's specific testimony about the two people who order her to take her clothes off. And it's because Cistrunk was Coleman's uncle and the height difference, it's pretty clear it's Cistrunk. So if there were three people and it could be inferred that Mr. James was one of the people, then would that be in furtherance of their plan? And no, because at that point, take the clothes off, where's the drugs or money? Sometime later in the kitchen, Coleman does the sexual assault. There's no linking between that and what happens presumably it sounds like about 20 to 25 minutes later. The timeline's here a little unclear, but we know from Andrew's testimony that this took about 20 to 25 minutes from start to finish, and that the sexual assault occurred just before the cops got there. And so we have this large gap in time. Now, if your hypothetical, I think, is that if the disrobing and then immediately right after a sexual assault occurs? Why does it have to be immediately right after? It would just be more indicative that that is part of the common criminal design. I don't care. It could be a stronger case, but so what? I mean, you are not at all suggesting that she was stripped to subdue her or something? Is that what you're saying? What I'm saying is that the only reason she was stripped was to make her defenseless and unlikely to flee? What I'm saying is that the disrobing is not connected to any sexual assault. What would the purpose of the disrobing be then? At that point, the next statement is almost immediately after is, where's the drugs or money? So we have to infer that the disrobe was... Could we easily infer that having her disrobed is to a prelude to a sexual assault? No. I disagree with that conclusion, Your Honor, because then if that was what was to occur, it didn't happen immediately afterwards. It happens while Coleman himself, by himself, in the kitchen with no indication to his co-defendants, hey, I'm over here, I'm going to go commit a sexual assault, or hey, I just committed a sexual assault. There's no indication in the record. And absent that, there is no evidence. Again, this is the state's burden to put that evidence on at trial. Had they wanted to do it, they should have done it. But they failed to do it. Your Honors, if you have no further questions, I thank you for your time. Thank you, Mr. Bender. We'll issue an order as soon as possible. Thank you, gentlemen.